36116. ATLANTIC COAST LINE RAILROAD CO. *v.* BROWN.

DECIDED APRIL 30, 1956.

**806**

*Alston, Sibley, Miller, Spann & Shackelford, James Thomas, Wm. B. Spann, Jr.,* for plaintiff in error.

*Hewlett, Dennis, Bowden & Barton, Sam D. Hewlett, Jr.,* contra.

NICHOLS, J. Although the plaintiff's petition was brought in two separate counts, both counts were based on the contention that the plaintiff's injuries resulted from the failure of the railroad to provide couplers in accordance with the Safety Appliance Act (45 U. S. C. A. § 2): "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

■ The first special ground of the defendant's motion for new trial complains that the trial court erred in sustaining the plaintiff's objections and rejecting evidence offered by the defendant that the automatic couplers in question worked properly immediately prior to the time when the plaintiff was injured. In the second special ground, the defendant complains that the trial court erred in sustaining the plaintiff's objection and rejected evidence that the coupler on one of the cars that separated was in perfect condition almost immediately after the plaintiff received his injuries. On the trial of the case, witnesses to the plaintiff's injury testified that a coupling took place, and that later the cars separated. The defendant's contention is that the place where the coupling was supposed to have taken place was on a curve; that the cars had previously been uncoupled from other cars on a straight track; that the truth of the matter is that the cars never were coupled together (not because of any defect in the couplers), but because of the negligence of the plaintiff (whose duty it was to make the coupling), in failing to adjust the direction in which the couplers were facing so that they would couple on impact; and that this was the proximate cause of the plaintiff's injuries. There was testimony that it is necessary to go between the cars and move the couplers by hand in order to change the direction in which they face in order to make a coupling on a curve when the uncouplings previously made were made on a straight track.

In the past there has been considerable confusion as to what is required of railroads under the Safety Appliance Act with reference to automatic couplers. In the cases of O'Donnell v. Elgin, Joliet &c. Ry. Co., 338 U. S. 384 (70 Sup. Ct. 200, 94 L. ed. 187, 16 A. L. R. 646), and Carter v. Atlanta &c. Ry. Co., 338 U. S. 430 (70 Sup. Ct. 226, 94 L. ed. 236), the Supreme Court of the United States set forth, in what was an apparent attempt to end this confusion, that whether the couplers in question worked properly on other occasions was immaterial, the question being "did the couplers in question couple on impact at the time in question." Therefore, the evidence in the present case as to whether or not the couplers had operated properly on other occasions, or the condition of one of the couplers after the injury, was not improperly withheld from the jury.

Moreover, the contention of the defendant that this evidence would have supported its position that the plaintiff's injury was due solely to his negligence in not aligning the couplers, inasmuch as the coupling took place on a curve, is without merit since it has been held that the fact that the coupling took place on a curve does not relieve the railroad of the duty of having cars equipped with couplers that couple on impact without the necessity of a man going between the cars. See, in this connection, Hohenleitner v. Southern Pacific Ry. Co., 177 Fed. 796, and Chicago R. I. & P. Ry. Co. v. Ray, 67 Okla. 77 (168 Pac. 999).

■ The third special ground complains that the trial court erred in failing to charge upon a timely written request that any amount which might be awarded the plaintiff would not be subject to Federal income tax.

This appears to be a case of first impression in Georgia on this question, and both parties agree that outside authorities differ as to whether or not this is a proper charge.

The jury was instructed that, in the event it should find in favor of the plaintiff, it should return a verdict that would compensate the plaintiff for the damages sustained. In arriving at its verdict it is of no concern to the jury what attorney's fees, income tax, or other expenses might have to be paid out of the recovery. For the court to have charged the jury that any amount awarded the plaintiff would not be subject to Federal income tax would have been improper.

■ The evidence (even including that which was properly excluded) demanded a finding that the two cars in question did couple upon impact, and that they later separated, not because of any action taken by the plaintiff or by any other member of the crew operating the train, but because at least one of the cars in question was not equipped with a coupler that would couple upon impact and stay coupled until released, as required by the Safety Appliance Act. See O'Donnell v. Elgin, Joliet & Eastern Ry. Co., supra, p. 388. There was also evidence as to the injuries, disability, and pain and suffering, sustained by the plaintiff becase of the failure of the cars to remain coupled. Therefore, the verdict was supported by the evidence, and the trial court did not err in denying the defendant's motion for new trial.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle, and Quillian, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I think that the court erred in excluding testimony to the effect that the couplers on the car in question coupled at least twice on impact just prior to the injuries, and as to the good condition of the couplers four days after the injuries when they were inspected. The testimony was relevant on the question whether the knuckles were properly set for coupling. There is no liability for a failure of couplers to couple on impact unless at least one of the knuckles on one of the two cars sought to be coupled together is open. Affolder v. N. Y. C. & St. L. R. Co., 339 U. S. 96 (70 Sup. Ct. 509, 94 L. ed. 683). The statement in Carter v. Atlanta &c. R. Co., 338 U. S. 430, that "The fact that the coupler functioned properly on other occasions is immaterial," does not mean what the majority of this court has ruled that it means. The question in that case was not whether the couplers were properly set or not. But that is the question we have in this case. If it be conceded that couplers are properly set and cars fail to couple one time on impact, it then is immaterial that the cars coupled properly at other times, but that is a far cry from saying that a railroad is precluded from disproving its liability by showing by circumstantial evidence which can be found by the jury to be inconsistent with sworn testimony of witnesses showing the contrary. I concede that, if the drawbar was out of line and caused the

car to fail to couple on impact on a curve, or the cars came uncoupled after coupling, the railroad would be liable, but these concessions still do not preclude the railroad from proving that it was not liable for the reason that there was a failure of the cars to couple upon impact, and that such failure was due to the failure of the plaintiff to open one of the knuckles. If the jury believed this to be true, it could have found that the car did not couple in the first instance and therefore did not later uncouple because the car on which plaintiff was riding was being pushed and it did not require a coupling to push it. The type of evidence here involved is clearly admissible under numerous authorities, among which are: 20 Am. Jur. 284, § 306, Notes 5, 6 and 7; Wigmore on Evidence, Vol. II, p. 413, § 437; Mc-Cormick on Evidence, p. 351, § 167 (1), 32 L. R. A. (NS) 1084; *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (7) (48 S. E. 318); *Central of Ga. Ry. Co.* v. *Keating,* 45 *Ga. App.* 811 (4) (165 S. E. 873), and cases cited. See also: Union Pac. R. Co. *v.* Edmondson, 77 Neb. 682 (110 N. W. 650); Woods *v.* Long Island R. Co., 42 N. Y. S. 140 (2), affirmed 159 N. Y. 546 (54 N. E. 1095); Chicago & N. W. R. Co. *v.* Gillison, 173 Ill. 264 (50 N. E. 657, 64 Am. St. R. 117).